b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

ANDREA L. BEHAN,                          CIVIL DOCKET NO. 2:21-CV-03321
Appellant

VERSUS                                    DISTRICT JUDGE CAIN

UNITED STATES
COMMISSIONER OF SOCIAL                    MAGISTRATE JUDGE PEREZ-MONTES
SECURITY,
Appellee

---

## REPORT AND RECOMMENDATION

Before the Court is claimant Andrea L. Behan's ("Behan's") appeal from the denial of her claim for Social Security disability income benefits ("DIB").

Because the ALJ's/Commissioner's conclusions as to Behan's physical residual functional capacity are not supported by substantial evidence, Behan's appeal should be GRANTED, the final decision of the Commissioner should be VACATED, and the case should be REMANDED for further proceedings.

## I.    Background

### A.    Procedural Background

Behan filed an application for DIB on January 15, 2019, alleging a disability onset date of July 12, 2017 (ECF No. 8-1 at 265) due to: "immune deficiency syndrome; weak bones; hearing loss in right ear; bowel problems; anxiety; dehydration problems; birth defect on toes limits balance" (ECF No. 8-1 at 340). That application was denied by the Social Security Administration ("SSA").  ECF No. 8-1 at 114.

A *de novo* hearing was held before an administrative law judge ("ALJ") on February 6, 2019, at which Behan appeared with her attorney and a vocational expert ("VE"). ECF No. 8-1 at 41. The ALJ found that Behan met the insured status requirements through December 31, 2019 and had not engaged in substantial gainful activity since July 12, 2017. ECF No. 8-1 at 99. Behan was a younger individual with at least a high school education.[1] ECF No. 8-1 at 106. The ALJ found that Behan had severe impairments of short bowel syndrome,[2] low magnesium, bursitis of the hip, and mild intellectual disability, but does not have an impairment or combination of impairments that meets or medically equals the

---

[1] Behan completed high school in special education and received a certificate of completion rather than a diploma. The SSA will generally use the claimant's highest numerical grade completed when determining the claimant's education level. *See* S.S.R. 20-01p, 2020 WL 1285114, at *2. The agency "will not find an individual's education category to be lower than his or her highest level of formal education based solely on an individual's history of having received special education." S.S.R. 20-01p, 2020 WL 1285114, at *3. A claimant's past work experience may show that the claimant as a higher educational ability than his formal educational level. *See id.* at *2; *see also* Social Security Program Operations Manual System ("POMS") D.I. 25015.010–Education as a Vocational Factor; *Griffin on behalf of Smith v. Kijakazi*, 2022 WL 348651, at *9 (N.D. Miss. 2022).

[2] Short bowel syndrome is a problem that occurs when part of the small intestine is missing or has been removed during surgery. Nutrients are not properly absorbed into the body as a result. Symptoms may include: diarrhea; fatigue; pale, greasy stools; swelling (edema), especially of the legs; very foul-smelling stools; weight loss; and dehydration. Treatment is aimed at relieving symptoms and ensuring the body receives enough hydration and nutrients. Complications may include: bacterial overgrowth in the small intestine; nervous system problems caused by a lack of vitamin B12 (this problem can be treated with vitamin B12 injections); too much acid in the blood (metabolic acidosis due to diarrhea); gallstones; kidney stones; dehydration; malnutrition; weakened bones (osteomalacia); weight loss. *See* MedlinePlus, Medical Encyclopedia: Short bowel syndrome, *available at* https://medlineplus.gov/ency/article/000237.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

severity of one the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ECF No. 8-1 at 100. Behan had the residual functional capacity to perform light work except that the work must be limited to simple, routine, repetitive tasks with 1, 2, or 3 step instructions, in a work environment free of any fast-paced production requirements, and with few ,if any, workplace changes. ECF No. 8-1 at 101. Therefore, Behan was unable to perform her past relevant work as a day care worker, but could do light, unskilled work that exists in significant numbers in the national economy such as labeler, product weigher, and packer. ECF No. 8-1 at 102, 106. The ALJ concluded that Behan was not under a disability, as defined in the Social Security Act, at any time from her alleged onset date, July 12, 2017, through the date of his decision on March 26, 2019. ECF No. 8-1 at 106.

Behan requested a review of the ALJ's decision. After review, the Appeals Council remanded her case to the ALJ with instructions: to obtain additional evidence concerning Behan's impairments in order to complete the administrative record; to further evaluate Behan's mental impairments (intellectual functioning) pursuant to 20 C.F.R. 414.1520a; and to further evaluate the opinion of Dr. Thrasher, Ph.D. pursuant to 20 C.F.R. 414.1520c. ECF No. 8-1 at 113.

A second administrative hearing was held on January 4, 2021, at which Behan appeared with her attorney and a vocational expert. ECF NO. 8-1 at 62. The ALJ found that Behan last met the insured status requirements through December 31, 2020. ECF No. 8-1 at 21. Behan had not engaged in substantial

gainful activity from her alleged onset date, July 12, 2017, through December 31, 2020. ECF No. 8-1 at 21. The ALJ found that Behan does not have a severe mental impairment, but has severe impairments of: short bowel syndrome, cervical degenerative disc disease, and osteoporosis. Behand also did not have an impairment or combination of impairment that met or medically equaled the severity of one listed in Appendix 1 of 20 C.F.R., Subpart P. ECF No. 8-1 at 19, 21.

Also, through the date last insured, Behan had the residual functional capacity to perform light work except that: she must maintain seizure precautions (no working at heights, driving, or operating machinery); her work must be limited to simple, routine, and repetitive tasks with one, two, or three step instructions; the work environment must be free of any fast-paced production requirements; she can make only simple, work-related decisions; and there can be few, if any, workplace changes. ECF No. 8-1 at 23. Although Behan was unable to perform any of her past relevant work, there are jobs existing in significant numbers in the national economy that she could do, such as: price marker, self-service store attendant, and housekeeper. ECF No. 8-1 at 25-26. The ALJ concluded that Behan was not under a disability as defined by the Social Security Act at any time from July 12, 2017 through December 31, 2020. ECF No. 10-1 at 27.

Behan requested a review of the ALJ's decision, but the Appeals Council declined to review it (ECF No. 12-1 at 5) and the ALJ's decision became the final

decision of the Commissioner of Social Security ("the Commissioner").  ECF NO. 8-1 at 7.

Behan then filed this appeal for judicial review of the Commissioner's final decision.  Behan contends that:

1. The ALJ failed to carry out the Appeals Council's order on remand to complete the record.  Also on remand, the ALJ, without explanation, changed his finding as to Behan's mental impairment.

2. The ALJ failed to articulate a rational medical and evidentiary basis for finding Behan could perform the activities identified in the residual functional capacity on a regular and continuous basis.

### B.  Medical and Other Records

#### 1.  School and employment records

Behan's educational records from Vernon Parish show that she is "learning disabled" and was placed in special education classes from ages 13 through 18.  ECF No. 8-1 at 388.  Behan successfully completed the "Alternative to Regular Placement Instructional Program" in high school, as documented in her Individualized Education Program, and received a "Certificate of Achievement" from the high school in 1994, rather than a diploma.  ECF No. 8-1 at 388-90, 407.

In 2000 through 2007, Behan worked as a special education bus aide in the Vernon Parish School System.  ECF No. 8-1 at 361, 426-29, 468, 489.  Behan also worked as a preschool teacher's aide/child-care worker in the Vernon Parish School System.  ECF No. 8-1 at 362, 458.  In 2003, Behan was awarded a "CDA Credential" for "Child Development Associate," because she demonstrated competence in

working with young children through an assessment by the CDA National Credentialing Program.  ECF NO. 8-1 at 459.

The Vernon Parish School Board employed Behan last as a custodian.  ECF No. 8-1 at 363, 391-97, 416.  In September 2014, Behan's physician filled out a form for the Vernon Parish School Board that showed Behan suffers from short bowel syndrome, and significant muscle spasms and pain, and could not perform her normal job duties.  ECF No. 8-1 at 398-400.

In 2018, Behan retired on disability from the Louisiana School Employees Retirement System.  ECF No. 8-1 at 500, 511, 1115.  Physician disability reports showed that: Behan suffers from short bowel syndrome, GAD, low magnesium, right ear hearing loss, and depression, and her prognosis was "fair."  Behan could no longer perform the job duties of a school custodian.  ECF No. 8-1 at 497-502.

## 2.    Medical records

In 2011, a bone density study showed that Behan had significant osteopenia with an elevated risk of fracture.  ECF No. 8-1 at 859.

In May 2013, another bone density study showed her osteopenia has worsened to osteoporotic and her fracture risk was high.  ECF No. 8-1 at 857.

In February 2016, Behan was admitted to the hospital by Dr. Hussain Alammar and treated for acute viral gastroenteritis, severe dehydration, tachycardia, hypomagnesemia (low magnesium), and hypokalemia (low potassium).  ECF No. 8-1 at 1182-83, 1187.

In March 2016, Behan complained of hip pain and occasional night sweats, and was prescribed Norco.  ECF No. 8-1 at 696.  A February 2014 MRI of Behan's right hip showed some soft tissue edema and a mild degree of degenerative change.  ECF No 8-1 at 791.  A December 2015 x-ray of the hip showed mild osteophyte indicating degenerative joint disease.  ECF No. 8-1 at 788.  A February 2016 MRI was unremarkable.  ECF No. 8-1 at 787.

In May 2016, Behan complained of weakness and fatigue, and was diagnosed with hypokalemia, dehydration, prerenal azotemia (abnormally high level of nitrogen waste products in the blood), and tachycardia.  ECF No. 8-1 at 694.  In follow-up, Behan was diagnosed with hypomagnesemia, hypokalemia, GERD, and lymphadenopathy.  ECF No. 8-1 at 695.

In October 2016, Behan complained of right hip pain and stiffness.  She had pain on palpation and with range of motion.  ECF 8-1 at 1190-92.  The alignment of her hip, pelvis, and thigh joints was symmetrical, there were no deformities or signs of muscle atrophy, there was no restriction or instability related to ligamentous laxity in her range of motion, her range of motion was normal, and there was no nerve compression.  ECF No. 8-1 at 1192.  She was prescribed medication.  ECF No. 8-1 at 1192.  Behan also reported intermittent tingling in her hands for a week, and was advised to continue to take her magnesium and potassium supplements.  ECF No. 8-1 at 1191.

In 2016 and 2017, Behan was treated for painful bursitis in her left shoulder. ECF No. 8-1 at 687-92.  She was given a Depakote injection, Norco, and diclofenac. ECF No. 8-1 at 687-88.  She also complained of her hands tingling and hip pain, and her Norco was refilled.  ECF No. 8-1 at 692.  Behan was referred to an orthopaedist for her hip pain.  ECF No. 8-1 at 693.

In February 2017, Dr. Mark Dodson, an orthopaedic surgeon, treated Behan for fractures of her right fourth and fifth metatarsals that were caused by a fall. ECF No. 8-1 at 571, 719.  Behan's symptoms were aggravated by her daily activities.  ECF No. 8-1 at 571.  Dr. Dodson noted a long-standing abnormality of the fourth metatarsal in her right foot.  ECF No. 8-1 at 576.

In July 2017, Behan was treated for hypomagnesemia, dehydration, and fatigue.  ECF No. 8-1 at 616, 763-64.  In August 2017, Behan complained of stress and headaches.  ECF No. 8-1 at 760.  Dr. Alammar diagnosed low magnesium level, GAD, and dehydration.  ECF No. 8-1 at 760.

In September 2017, Behan (then 42 years old) complained of nausea, abdominal pain, and frequent diarrhea.  ECF No. 8-1 at 749.  Dr. Alammar hospitalized her for acute colitis (inflammation of the colon), dehydration, hypomagnesemia, abnormal CT scan of the abdomen and pelvis, and tachycardia. ECF No. 8-1 at 599-604; 747-755, 803.  Her secondary diagnoses were short bowel syndrome, chronic right hip bursitis, hyperlipidemia, B12 deficiency, depression, and anxiety disorder.  ECF No 8-1 at 599, 754, 803.  The CT scan of her abdomen

and pelvis did not show an acute abdominopelvic process.  ECF NO. 8-1 at 820.
Behan was prescribed Zofran.  ECF No. 8-1 at 819.  Behan continued to have low
magnesium in October 2017.  ECF No. 8-1 at 591.

In October 2017, Dr. Alammar stated that Behan suffer from a UTI, GAD, a
B12 deficiency, and a magnesium deficiency.  ECF No. 8-1 at 741-43.  He noted that
she exhibited a lot of anxiety.  ECF No. 8-1 at 741.  Later in the month, when he
treated Behan for right hip pain, Dr. Alammar diagnosed generalized anxiety
disorder, right hip bursitis, back strain, and short bowel syndrome, and prescribed
Percocet, Flexeril, and antibiotics.  ECF No. 8-1 at 736-37.

In November 2017, Dr. Alammar found: Behan's magnesium and B12 were
both low again; she had a decreased range of motion in her right hip; and she was
very nervous and anxious.  ECF No. 8-1 at 733-35.  Behan's condition continued to
be the same in December 2017, with the addition of left shoulder pain.  ECF No. 8-1
at 728-29.

In January 2018, Behan's right hip was again painful.  ECF No. 8-1 at 727.
In February, Behan had abdominal pain and nausea.  ECF No. 8-1 at 724.  In
March, her back and left hip were painful.  ECF NO. 8-1 at 722-23.  And in April
2018, her magnesium was low again.  ECF No. 8-1 at 720-21.

Behan began seeing Dr. Renick Webb, E.N.T., for sinusitis in June 2017.
ECF No. 8-1 at 619.  In October, Behan had a hearing evaluation.  ECF No. 8-1 at
635.  Behan was diagnosed with sensorineural hearing loss in both hears due to

abnormal tympanograms bilaterally.  ECF No. 8-1 at 635.  Behan had severe to profound mixed hearing loss for the right ear, and mild to profound mixed hearing loss for the left ear.  ECF No. 8-1 at 635.  Behan continued treatment for her allergic rhinitis and Dr. Webb performed a bilateral turbinate reduction in July 2017 to improve her sinus congestion.  ECF No. 8-1 at 626, 635.  In August 2017, a CT scan of her paranasal sinuses was clear.  ECF No. 8-1 at 633.  However, Behan continued to have right-sided headaches which appeared to be caused by temporal and masseter muscle pain on the right side.  ECF No. 8-1 at 633.

In July 2017, Dr. Alammar found Behan's magnesium was low, she had pain in her right hip and left shoulder, and she had fatigue.  ECF No.8-1 at 1104.

In 2017, Dr. Robert Clanton, Ph.D., was asked to assess Behan's mental functioning from her medical records for the SSA.  ECF No. 8-1 at 83-84.  Dr. Clanton stated that, although Behan alleged problems with her concentration, understanding, following directions, and ability to cope with stress and change, he found only diagnoses of depression and anxiety, and no treatment for those conditions.  ECF No. 8-1 at 83.  Dr. Clanton stated that a consultative exam with a mental status evaluation was needed to assess Behan's mental functional capacity.  ECF No. 8-1 at 83.

In December 2017, Dr. Timothy Honigan filled out a physical residual functional capacity assessment on Behan after reviewing her medical records.  ECF No. 8-1 at 87.  Dr. Honigan found that Behan has an environmental limitation of

needing to avoid even moderate exposure to noise due to her abnormal tympanograms bilaterally, which cause severe to profound mixed hearing loss in her right ear and mild to profound mixed hearing loss in her left ear. ECF No. 8-1 at 87-88. However, he noted that Behan has 100% word discrimination in the left hear and 75% in the right ear, so she was not at listing level. ECF No. 8-1 at 88. Dr. Honigman found no physical limitations except as to hearing. ECF No. 8-1 at 88. Dr. Honigman found that Behan suffers from problems associated with immune deficiency syndrome, weak bones, hearing loss in her right ear, bowel problems, anxiety, dehydration problems, toe problems, and balance problems. However, she is able to sit, walk, stand, lift, carry items, and sustain activity well enough to perform some types of jobs. ECF No. 8-1 at 92-93.

In January 2018, Dr. Fay C. Thrasher, Ph.D., performed a mental status examination of Behan. Dr. Thrasher was also able to review Behan's medical records. ECF No. 8-1 at 641. Dr. Thrasher noted that Behan drives and has a driver's license, but was driven to the appointment by her mother. ECF No. 8-1 at 641. Behan was taking Citalopram (an antidepressant) that had been prescribed by her primary care physician. ECF No. 8-1 at 641. Dr. Thrasher found that Behan's estimated intellectual functioning was within the "mild mental range." ECF No. 8-1 at 643. Dr. Thrasher provisionally diagnosed Behan with mild mental intellect disorder, anxiety disorder associated with her medical condition, and depression disorder (by history). ECF No. 8-1 at 643. Dr. Thrasher also found that Behan has

11

psychosocial stressors of poor cognitive functioning and lack of employment.  ECF No. 8-1 at 643.

Dr. Thrasher assessed a severity level of 4 (severe).  ECF No. 8-1 at 643.  Dr. Thrasher stated that Behan: (1) appeared to moderately understand, moderately retain, and moderately follow simple to fairly complex instructions within normal limits; (2) had an estimated intellectual ability in the "mild" mental range; (3) probably would not be able to perform simple to complex work tasks; (4) would not be able to maintain attention and concentration to perform these tasks for a 2-hour work block; (5) had a limited ability to relate to coworkers and the general public due to her mild mental disorder and serious medical issues; (6) had a diminished ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek due to her mild mental disorder and serious medical issues; and (7) had a diminished ability to tolerate the stress, pressure, and social environment of a work setting due to her mild mental disorder and serious medical issues.  ECF No. 8-1 at 643-44.  Dr. Thrasher concluded that Behan appeared to be immature, dependent, and lacking the knowledge, experience, and self-responsibility necessary to effectively manage her financial affairs.  ECF No. 8-1 at 644.

Later in January 2018, Dr. Clanton filled out a psychiatric review technique form from Behan's medical records.  ECF No. 8-1 at 84-85.  Dr. Clanton again noted that Behan had no history of psychiatric treatment and had not had a mental health diagnosis.  ECF No. 8-1 at 85.  Dr. Clanton also noted Dr. Thrasher's

provisional diagnosis of mild intellectual disorder was done without the benefit of IQ testing, and stated that "borderline intellectual functioning" would be a more appropriate diagnosis than "mild mental range".  ECF No. 8-1 at 85.

Dr. Clanton found Behan's allegations of anxiety disorder and borderline intellectual functioning are partially consistent with the objective findings, through the severity of her impairment was not supported by the objective findings.  ECF NO. 8-1 at 85.  Dr. Clanton filled out a mental residual functional capacity assessment.  ECF No. 8-1 at 89.  Dr. Clanton found that Behan is: moderately limited in her ability to understand and remember detailed instructions (she may have difficulty understanding and remembering complex, instructions with more than two steps); moderately limited in her ability to carry out detailed instructions; moderately limited in her ability to maintain attention and concentration for extended periods; moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in her ability to respond appropriately to changes in the work setting; and moderately limited in her ability to set realistic goals or make plans independently of others.  ECF No. 8-1 at 89-90.

In June 2017, Behan went to the ER with generalized abdominal and back pain.  ECF No. 8-1 at 1522.  Behan was diagnosed with gastroenteritis and was given saline by an IV, Zofran (an anti-emetic), Dilaudid (an opioid), and

promethazine (for nausea).  ECF No. 8-1 at 1524, 1526.  X-rays of her right hip showed mild, widespread osteoporosis but were otherwise normal.  ECF No. 8-1 at 1616.  A CT scan of her abdomen and pelvis showed minimal gastroenteritis and/or mild localized ileus.  ECF No. 8-1 at 1617.

In December 2017, Behan went to the ER with a severe headache and requested hydrocodone (an opioid).  ECF No. 8-1 at 1511.  Behan was prescribed allergy medications, an anti-emetic, an anti-depressant, and Norco (an opioid).  ECF No. 8-1 at 1511.

In February 2018, Behan was seen in the ER for an earache, and was prescribed Norco (an opioid), Singulair (allergy medicine), prednisolone (a cortico-steroid), and Bromfed (allergy medicine).  ECF No. 8-1 at 1508.

In March 2018, Behan had x-rays of her lumbar spine due to complaints of low back pain.  ECF No. 8-1 at 668.  The x-rays showed only early spondolytic changes, and no acute abnormality.  ECF No. 8-1 at 668, 785, 799.

In May 2018, Dr. Alammar found Behan's magnesium was low, and she had GAD.  ECF No. 8-1 at 1099.  At the ER, Behan complained of dehydration and acute low back pain.  ECF No. 8-1 at 1497.  Behan was prescribed magnesium, Norco, and Flexeril.  ECF No. 8-1 at 1499.

In January 2019, Behan complained of intermittent pain in her right hip, was diagnosed with bursitis, and was prescribed Toradol (an NSAID), Decadron (a

corticosteroid), Kenalog (a corticosteroid), and Norco (an opioid).  ECF No. 8-1 at 1482-84.

In April 2019, Behan was diagnosed with dehydration and neck strain.  ECF No. 8-1 at 845-53.  A chest x-ray showed a normal heart and no active-appearing chest disease.  ECF No. 8-1 at 878, 1615.  Behan was given an intravenous solution and prescribed Tylenol and Flexeril.  ECF No. 8-1 at 845-53.  Later in April, Behan complained of an irregular pulse, face tingling, and constant thirst.  ECF No. 8-1 at 863, 868, 1642.  Behan's glucose was high (119) and her magnesium was low.  ECF No. 8-1 at 865.  Behan was diagnosed with dehydration and hypomagnesemia.  ECF No. 8-1 at 867;1474.

In May 2019, Behan was evaluated by Dr. Kimberly Landrum, a primary care provider.  Dr. Landrum reviewed Behan's history of a necrotizing bowel infection as an infant, removal of a large portion of her small intestine at that time, and subsequent suffering from diarrhea (8-10 stools per day), abdominal cramping, dehydration, and multiple vitamin and electrolyte deficiencies.  ECF No. 8-1 at 1008.  Behan also had a history of frequent heartburn, for which she takes pantoprazole as needed, and nausea for which she takes Zofran as needed.  ECF No. 8-1 at 1008.  Behan had electrolyte and vitamin deficiencies due to post-surgical malabsorption, including low potassium, magnesium, vitamin D, and vitamin B-12, for which she took supplements that included B-12 injections and 20 over-the counter potassium tablets daily.  ECF No. 8-1 at 1008-09.  Dr. Landrum converted

15

Behan's over-the-counter potassium (40 ml.) to potassium chloride (20 ml.). Additionally, Behan had current anxiety and osteoporosis, and had depression in the past. ECF No. 8-1 at 1008. Dr. Landrum found Behan had good judgment and a normal mental status. ECF No. 8-1 at 1009. Behan's GERD was stable with daily pantoprazole. ECF No. 8-1 at 1009. Behan's GAD medication was changed to venlafaxine. ECF No. 8-1 at 1010. Behan was prescribed Zofran and ondansetron for nausea. ECF No. 8-1 at 1010-11.

In July 2019, Behan was treated by Dr. Landrum for a toothache and nausea. ECF No. 8-1 at 1003. Behan's chest was x-rayed due to her elevated while blood count, but the results were normal. ECF No. 8-1 at 1613.

In August 2019, Behan had another check-up with Dr. Landrum. ECF No. 8-1 at 994. Behan was 44 years old, 5'1" tall, and weighed 94.5 pounds. ECF No. 8-1 at 995. She reported her anxiety was improved on venlafaxine, although she was still anxious. ECF No. 8-1 at 996. Behan reported nose/sinus problems, nausea, abdominal pain, frequent diarrhea, anxiety, and stable headaches, but no depression, light-headedness, or pain. ECF No. 8-1 at 997. Dr. Landrum ordered magnesium through an IV; found Behan's short bowel syndrome was stable and continued her WelChol; her GERD was stable; and her nausea was improved. She increased Behan's venlafaxine; continued the B-12 injections; refilled the vitamin D prescription; and continued the magnesium and potassium supplements. ECF No. 8-1 at 998-999;1452-53.

16

In October 2019, Behan was treated in the ER for complaints of lightheadedness, dizziness, and vomiting. ECF No. 8-1 at 887. Behan was given meclizine, but continued to complain of nausea. ECF No. 8-1 at 890. Behan was also given an intravenous saline solution and Phenergan. ECF No. 8-1 at 890. Two days later Behan returned to the ER–her blood pressure was 139/105, she weighed 97 pounds, and had tachycardia. ECF No. 8-1 at 901, 903. Behan was given Zofran, an intravenous saline solution, potassium, and magnesium. ECF No. 8-1 at 907.

Two weeks later, Behan returned for headache, bilateral ear pain and "feeling dehydrated." ECF No. 8-1 at 916, 919, 1441. CT scans of her face and brain were unremarkable. ECF No. 8-1 at 937-40. X-rays of Behan's sinuses showed chronic bilateral maxillary sinusitis. ECF No. 8-1 at 1608. Behan was given an intravenous saline solution and hydrocodone. ECF. No. 8-1 at 921-23. In an ER follow-up, Dr. Landrum prescribed meclizine for her dizziness (and noted she was seeing an ENT), and referred her to a gastroenterologist. ECF No. 8-1 at 982-83.

X-rays of Behan's cervical spine in November 2019 were normal. ECF No. 8-1 at 1607.

In December 2019, Behan complained of tingling, and was treated in the emergency room for hypokalemia (low potassium). ECF No. 8-1 at 1299-1306.

In December 2019, Behan complained of nausea, diarrhea, fever, possible dehydration, and possible low magnesium level. ECF No. 8-1 at 956. A CT scan of

Behan's abdomen and pelvis showed moderate gastroenteritis and/or ileus, and a mild, chronic appearing superior endplate compression fracture of the L4 vertebral body.  ECF No. 8-1 at 948, 958.  Behan was given magnesium, saline by IV, Zofran, and Ketorolac, and prescribed Cipro.  ECF No. 8-1 at 958-59.  Dr. Landrum followed up with Behan.  She noted Behan's short bowel syndrome was still causing significant diarrhea and frequent nausea and vomiting, but Behan had an appointment with a gastroenterologist; her GAD was not well-controlled so she tried increasing the venlafaxine; she tried pantoprazole for the GERD; found her dizziness was resolved; noted she was to have a bone density scan done; and continued her B12 injections, vitamin D supplement, magnesium supplement, and potassium supplement.  ECF No. 8-1 at 979.

In February 2020, an x-ray of Behan's upper GI showed mild gastroesophageal reflux.  ECF No. 8-1 at 1090.  In February 2020, Dr. Richard Norem performed an esophagogastroduodenoscopy (EGD test) to examine Behan's GI tract.  Dr. Norem noted that Behan had abdominal scars from a significant amount of bowel resection as an infant.  ECF No. 8-1 at 1113, 1119.  Dr. Norem found she had mild chronic gastritis and some reflux, and diagnosed GERD, short bowel syndrome (long term), and anxiety.  ECF No. 8-1 at 1111, 1113.  Dr. Norem explained that a lot of Behan's issues were caused by her short bowel syndrome and advised her to continue to use omeprazole.  ECF No. 8-1 at 1112.  In a disability report for Behan's recertification of disability for her retirement under the

18

Louisiana School Employees Retirement System, Dr. Norem stated that she is disabled by her "short gut syndrome" and "multiple absorption deficiencies." ECF No. 8-1 at 1121.

In April 2020, Dr. Landrum evaluated Behan for worsening tingling in her face and hands for two weeks, which could be caused by low magnesium levels. ECF No. 8-1 at 970-73.

In May 2020, Behan was treated in the emergency room for dehydration. ECF No. 8-1 at 1263-67. She was also treated for right shoulder pain and was given Toradol. ECF NO 8-1 at 1277-85. In a follow-up visit, Dr. Landrum found Behan's GAD, GERD, and nausea were stable, her hypomagnesemia was improved. Dr. Landrum continued Behan's medication and supplements. ECF No. 8-1 at 965-69.

A CT scan of Behan's brain in May 2020 was negative. ECF No. 8-1 at 1349-50. X-rays of Behan's right shoulder showed mild degenerative changes without acute fracture or malalignment. ECF No. 8-1 at 1351. X-rays of her right hip and pelvis were negative. ECF No. 1352-53.

A bone density scan in June 2020 showed Behan is osteoporotic and at a high risk of fracture. ECF No. 8-1 at 1108.

In June 2020, Behan was treated in the emergency room for dehydration, hypokalemia, and hypomagnesemia. ECF No 8-1 at 1394. Behan's husband had difficulty waking her that morning. ECF No. 8-1 at 1398. Behan was given saline, magnesium, and potassium chloride. ECF No. 8-1 at 1396.

In July 2020, Behan had a follow-up appointment with Dr. Landrum.  ECF No. 8-1 at 1136, 1153.  Behan reported continued frequent stools and nausea, but her heartburn was controlled by the daily pantoprazole.  ECF No. 8-1 at 1137.  Behan reported seeing a psychiatrist who had prescribed alprazolam in addition to her sertraline, which seemed to control her anxiety fairly well.  ECF No. 8-1 at 1137.  Behan also stated that she took pain medication nearly every day for joint pain, particularly in her shoulder (impingement syndrome of right shoulder) and hip, and was advised to discuss that with her orthopedist.  ECF No. 8-1 at 1137.  Behan was also taking alendronate for her osteoporosis.  ECF No. 8-1 at 1138.

In early August 2020, Behan complained of low magnesium and tingling in the emergency room, and was treated with magnesium.  ECF No. 8-1 at 1385, 1387, 1391.  Later in August 2020, Behan was taken to the emergency due to a reported seizure with shaking, foaming at the mouth, and loss of consciousness that occurred while standing in line at the grocery store.  ECF No. 8-1 at 1373, 1379.  EMS arrived after the seizure ended, but were told about it by the people in the store who witnessed it.  ECF No. 8-1 at 1373.  Behan was given lorazepam, saline, magnesium, Keppra (an anticonvulsant), and Ketorolac, and discharged.  ECF No. 8-1 at 1374-75.  A CT scan of her head was unremarkable.  ECF No. 8-1 at 1160, 1605.

In September 2020, Behan "passed out."  ECF No. 8-1 at 1128.  She had generalized tonic/clonic seizure activity, with some postictal amnesia, but no biting

of the tongue or urinary incontinence.  ECF No. 8-1 at 1131.  Behan was found to be dehydrated and low on potassium and magnesium.  ECF No. 8-1 at 1131.  In October 2020, Dr. Arsham Naalbandian, a neurologist, conducted EMG studies and found cervical spinal stenosis with hyperreflexia.  ECF No. 8-1 at 1124, 1126.  Although Behan had a history of headaches, there were no findings of temporal arteritis or intracranial pathology.  ECF No. 8-1 at 1126.  There were also no EMG or nerve conduction study findings of diffuse polyneuropathy or lumbar radiculopathy.  ECF No. 8-1 at 1126.  The MRI studies showed a normal brain.  ECF No. 8-1 at 1125.  The EEG study was negative.  ECF NO. 8-1 at 1127, 1148.

In October 2020, Behan complained of neck pain for two weeks.  ECF No. 8-1 at 1355.  An MRI of Behan's cervical spine showed only diffuse mild congenital central canal stenosis with no significant nerve root or sac compression.  ECF No. 8-1 at 1146.  EMGs, ordered due Behan's complaints of paresthesia, showed no signs of diffuse polyneuropathy or lumbar radiculopathy.  ECF No. 8-1 at 1149.  She was diagnosed with cervical radiculopathy and cervical strain, prescribed Tylenol #3 and Robaxin, and told to follow up with her primary care physician and her scheduled MRI.  ECF No. 8-1 at 1359-60.

In November 2020, Behan was evaluated by Dr. Troy Vaughn, a neurosurgeon, for neck pain and radiculopathy.  ECF NO. 8-1 at 1619.  Dr. Vaughn diagnosed chronic neck pain with bilateral cervical radiculopathy, and cervical

spondylosis at C5-6, and prescribed cervical facet injections at C5-6.  ECF No. 8-1 at 1620-21.

Behan also underwent mental health counseling.  In early October 2019, Behan (now "Goins") sought mental health counseling for opioid addiction, claiming to have become addicted when she was prescribed opioids for hip pain.  ECF no. 8-1 at 1638.  Behan also stated she has ongoing general anxiety and worry due to her health problems, but no panic attacks.  ECF No. 8-1 at 1639.  Behan had no prior psychiatric treatment and no history of depression, anxiety, or other psychiatric symptoms.  ECF No. 8-1 at 1638. Behan's cognitive functioning and fund of knowledge were intact and age appropriate.  ECF No. 8-1 at 1641.  Her short- and long-term memory were also intact, as well as her ability to abstract and do math calculations.  ECF No 8-1 at 1641.  Her vocabulary and fund of knowledge indicated cognitive functioning in the normal range, her insight into problems appeared normal, and her judgment appeared to be intact.  ECF No. 8-1 at 1642.  Behan's behavior was cooperative and attentive, her affect was congruent with her mood, her eye contact was appropriate, and she was oriented.  ECF No. 8-1 at 1642.  She was diagnosed with opioid dependence.  ECF No. 8-1 at 1642.

Later in October, at the psychiatric clinic, Behan reported chronic anxiety for which she was taking Xanax.  ECF No. 8-1 at 1631.  Behan had no psychiatric history.  ECF No. 8-1 at 1632.  She was again diagnosed with opioid dependence as well as generalized anxiety disorder.  ECF No. 8-1 at 1636.  Behan was prescribed

Cymbalta (it was noted that she had been taking Xanax), and advised that she was considered underweight at 94 pounds. ECF No. 8-1 at 1635, 1637.

In January 2020, Behan reported decreased anxiety with Cymbalta. ECF No. 8-1 at 1629. Behan weighed 97 pounds. ECF No. 8-1 at 1629. Her Cymbalta was increased. ECF No. 8-1 at 1630.

In May 2020, Behan reported intermittent "down days" with feelings of sadness and being overwhelmed. ECF No. 8-1 at 1627. Behan was prescribed Xanax in addition to Cymbalta. ECF No. 8-1 at 1628.

In July 2020, Behan reported doing well on her medications, which decreased her depression and helped her anxiety. ECF No. 8-1 at 1625. Her medications were continued. ECF No. 8-1 at 1626.

In September 2020, Behan reported her anxiety was "doing good with the meds." ECF No. 8-1 at 1623. Her condition appeared to be stable, her behavior was stable, and her medication compliance was good. ECF No. 8-1 at 1623. Her medications were continued. ECF No. 8-1 at 1624.

### C.    2019 Administrative Hearing

Behan appeared at her February 2019 administrative hearing with her attorney and a VE. ECF No. 41. Behan testified that she was 32 years old.

Behan testified that she has problems with her hearing–she wears hearing aids in both ears. ECF No. 8-1 at 44-45. Behan is completely deaf in her right ear but can hear some with her hearing aid. ECF No. 8-1 at 45. Behan can hear some

with her left year, and better with her hearing aid.  ECF No. 8-1 at 45.  Behan said her hearing loss was caused by magnesium deficiencies.  ECF No. 8-1 at 45.

Behan has "short bowel syndrome" because over half of her intestines had to be removed when she was an infant.  ECF No. 8-1 at 51.  Behan's short bowel syndrome prevents her body from absorbing magnesium and affects her immune system.  ECF No. 8-1 at 46, 52.  It has been a life-long problem.  ECF No. 52.  If her magnesium gets too low, her hands and face draw up and she has to go the hospital and have IVs.  ECF No. 8-1 at 46.  That occurs every three to four months.  ECF No. 8-1 at 46.  However, Behan also testified that she had not had to have an IV for several months.  ECF No. 8-1 at 55.  Getting sick contributes to Behan's magnesium deficiency.  ECF No. 8-1 at 46.  Behan missed work because of problems caused by her short bowel syndrome.  ECF No. 8-1 at 52.

Behan's right hip is painful due to osteoporosis that is caused by her magnesium deficiency.  ECF No. 8-1 at 46.  When Behan's magnesium level drops, she has to hydrate quickly because it can affect her heart.  ECF No. 8-1 at 49.

Behan testified that she has depression and anxiety because she cannot deal with stress.  ECF No. 8-1 at 46.  Stress and depression cause Behan's magnesium level to drop.  ECF No. 8-1 at 47.  Behan takes Xanax, which helps with her anxiety.  ECF No. 8-1 at 47.  Behan has also had panic attacks, which make it feel like "everything's closing in."  ECF NO. 8-1 at 47.  Behan was not seeing a counselor or

24

psychiatrist and had never been hospitalized for her depression or anxiety. ECF No. 8-1 at 48.

Behan has two toes on each foot that are deformed, so she cannot wear certain shoes and her ability to walk is affected–she has to walk with her feet "out." ECF No. 8-1 at 48. Behan has never had to wear a brace, and no doctor has ever restricted her activities because of her feet. ECF No. 8-1 at 48.

Behan testified that she is able to dress and bathe herself, and she can do dishes and laundry, but she tires easily. ECF No. 8-1 at 49.

Behan finished high school in special education and received a certificate. ECF No. 8-1 at 49. Behan testified that she can read and write, and add and subtract, but not very well. ECF no. 8-1 at 50. Behan drives locally. ECF No. 41.

Behan was not working. ECF No. 8-1 at 50. She last worked about two years before, as a janitor for the School Board. ECF No. 8-1 at 50. Behan did that for three or four years, but she had difficulty lifting and was sick a lot. ECF No. 8-1 at 50. Behan was not able to strip and wax the floors, and could not stand on ladders, change light bulbs, or lift boxes of paper. ECF No. 8-1 at 53. Behan's nephew lifted boxes for her. ECF No. 8-1 at 53. Before she was a janitor, Behan worked with a bus driver on a special education bus. ECF No. 8-1 at 50. Behan testified that she knew the driver, who helped her get the job. ECF No. 8-1 at 52. The driver did all of the lifting (wheelchairs) and stopped when Behan needed to use the bathroom, so she made accommodations for Behan. ECF No. 8-1 at 52-53. Because she worked

11 years total, Behan was able to leave on "disability" through the School Board.
ECF NO. 8-1 at 50.  Someone else filled out the disability paperwork for Behan.
ECF No. 8-1 at 53.

Before she worked for the School Board, Behan worked at a daycare center,
helping to care for the older children.  ECF No. 8-1 at 51.  She did not have to do
any lifting.  ECF No. 8-1 at 54.  However, again, Behan was sick a lot.  ECF No. 8-1
at 51.

Behan testified that, if she were working, she would have to take breaks
more often than every two hours because she tires easily and has to go to the
bathroom more due to her short bowel syndrome.  ECF No. 8-1 at 54.  If she is sick
and taking antibiotics, she has to use the bathroom even more.  ECF No. 8-1 at 54.
Behan testified that she normally uses the bathroom 10 to 12 times per day, but if
she is taking antibiotics, she uses it more.  ECF No. 8-1 at 54-55.  Behan has to
make sure she does not dehydrate.  ECF No. 8-1 at 55.  When she worked on the
school bus, the driver had to stop for Behan to use the bathroom.  ECF No. 8-1 at
55.  Behan always missed one or two days of work every month due to illness.  ECF
No. 8-1 at 56.

Behan testified that her shoulder joint also bothers her.  ECF No. 8-1 at 55.
Her bones are thin and will break if she falls.  ECF NO. 8-1 at 55.  Behan broke her
foot a couple of years before, and it took three months to heal.  ECF No. 8-1 at 55.

The VE testified that Behan's past relevant work: as a daycare worker, DOT 359.677-018,[3] was light work, semi-skilled, SVP 4[4]; as a janitor, DOT 281.687-014, was heavy work, unskilled, SVP 2; and as a bus monitor, DOT 372.667-042, was light, unskilled, SVP 2.  ECF No. 8-1 at 57.

The ALJ posed a hypothetical to the VE involving an individual of the same age, education, and work experience as Behan, and who has the following limitations: light work (lift/carry up to 20 pounds occasionally and 10 pounds frequently); standing and walking up to six hours in an eight hour day; sitting up to six hours in an eight hour day with normal breaks; simple, routine, repetitive work; one- or two or three-step instructions; no fast-paced production requirements; only simple, work-related decision-making; and few, if any, workplace changes.  ECF No. 8-1 at 57.  The VE testified that such a person could do Behan's past relevant work as a bus monitor.  ECF No. 8-1 at 58.

The VE further testified that such a person could also do work available in significant numbers in the national economy, such as: labeler (DOT 920.687-126, light, unskilled, SVP 2, 25,000 jobs in the national economy; produce weigher, DOT

---

[3] Dictionary of Occupational Titles.

[4] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* Dictionary of Occupational Titles, App. C (rev. 4th ed. 1991).  Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher.  *See* Social Security Ruling 00B4p, 2000 WL 1898704, at *3 (2000); *see also* 20 C.F.R. § 404.1568.

299.587-010, light, unskilled, SVP 1, 14,000 jobs in the national economy; or packer, DOT 524.687-018, light, unskilled, SVP 1, 9,000 jobs in the national economy. ECF NO. 8-1 at 58.

The ALJ posed a second hypothetical, adding the condition that the individual in the first hypothetical additionally would have to take unscheduled breaks, up to one 10- or 15-minute break per hour to deal with problems caused by her short bowel syndrome. ECF No. 8-1 at 58. The VE testified there would not be any unskilled jobs that such a person could do. ECF NO. 8-1 at 58.

### D.   2021 Administrative Hearing

A second hearing was held in January 2021, at which Behan appeared with her attorney and a vocational expert. ECF NO. 8-1 at 62. Behan testified that she can drive, but does not drive a lot due to her health problems. ECF No. 8-1 at 65. Behan testified that she "passed out" at a recent stress test, so her doctor told her she should not drive much. ECF No. 8-1 at 65. Behan testified that she has seizure-like activity due to dehydration and drops in her magnesium and potassium levels. ECF No. 8-1 at 66-67.

Behan takes magnesium because her body does not absorb it well due to her short bowel syndrome. ECF No. 8-1 at 65. Behan also takes potassium, Vitamin D, Protonix (for acid reflux), iron, Xanax, a vitamin B12 injection every two weeks, Zofran (for nausea), another nausea medicine, and myostatin (for thrush). ECF No. 8-1 at 66. Behan also takes antibiotics often. ECF No. 8-1 at 66.

Behan testified that her magnesium deficiency affects her heart, but she does not have heart disease.  ECF No. 8-1 at 67.

Behan has neck pain with some numbness and tingling due to cervical stenosis.  ECF No. 8-1 at 67.  She has had injections in her neck for that.  ECF No. 8-1 at 68.

Behan testified that she sees a counselor and a psychiatrist once a month for anxiety and depression.  ECF No. 8-1 at 68.

Behan does not have any problems dressing or bathing.  ECF NO. 8-1 at 68. However, Behan has difficulty doing housework because she gets tired a lot and has to stop and rest.  ECF No. 8-1 at 69.  Behan testified that her husband helps her with the housework.  ECF No. 8-1 at 69.

Behan went to school through the twelfth grade in special education.  ECF NO. 8-1 at 69.  Behan can read, write, and do basic math.  ECF NO. 8-1 at 69.

Behan is on disability through the School Board, after working as a janitor. ECF NO. 8-1 at 69.  Behan also worked part-time in a daycare for a while, but she was sick too much.  ECF No. 8-1 at 70.

Behan stopped working in July 2017 because she was sick all the time.  ECF No. 8-1 at 70.  Behan testified that she was having difficulty maintaining her magnesium and potassium levels, due to her short bowel syndrome, which was causing her to be weak and have other problems.  ECF No. 8-1 at 71.  The short bowel syndrome also causes her body to "hold a lot of acid," so she goes to the

bathroom 10 to 12 times per day.  ECF No. 8-1 at 71-72.  She goes to the bathroom three or four times at night.  ECF No. 8-1 at 72.  She spends about 10 minutes in the bathroom each time  ECF No. 8-1 at 72.  Some foods (such as those with certain color dyes) go through her too fast, and antibiotics are very hard on her system.  ECF No. 8-1 at 71.  Behan drinks a lot of Ensure and Pedialyte.  ECF No. 8-1 at 71.

Behan testified that she gets magnesium and potassium through an IV frequently, when her blood work shows her levels are low, or when they drop and she has to go to the hospital.  ECF No. 8-1 at 72.

The VE testified that Behan's only past relevant work was as a janitor (DOT 382,664-010) and that was medium level work, SVP 3.

The ALJ posed a hypothetical involving an individual with Behan's age, education, and work experience, who is limited to light work (lift/carry up to 20 pounds occasionally and 10 pounds frequently), standing and walking for up to six hours in and eight hour day, sitting for up to six hours in an eight hour day, with normal breaks, who must maintain seizure precautions (no working at heights, driving, or operating machinery); only simple, routine, and repetitive work with one- or two-step instructions; a work environment that is free of fast-paced direction requirements; involving only simple, work-related decisions; and few, if any, work0lace changes.  ECF NO. 8-1 at 73-74.  The VE testified that such a person could do work that is available in significant numbers in the national economy such as: price marker (DOT 209.587-034, light work, SVP 2, 125,000 jobs in the national

economy); self-service store attendant (DOT 299.677-010, light work, SVP 2, 292,000 jobs in the national economy); and housekeeper (DOT 323.687-014, light work, SVP 2, 220,000 jobs in the national economy).  ECF No. 8-1 at 74.

The ALJ posed a second hypothetical to the VE, involving the individual described in the first hypothetical with the additional limitations that, due to severe mental impairments, she would be unable to sustain sufficient concentration, persistence, or pace to do even simple, routine tasks on a regular and continuing basis for an eight-hour day, five days a week for a 40-hour workweek.  ECVF No. 8-1 at 74.  The VE testified that such an individual would not be able to perform any work in the national economy.  ECF No. 8-1 at 74.

D.    <u>ALJ's Findings and Conclusions</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Behan (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *See Greenspan v.*

*Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Behan had not engaged in substantial gainful activity from July 12, 2017 (her alleged disability onset date) through the date she was last insured, December 31, 2020. ECF No. 8-1 at 18-19. The ALJ also found that as of December 31, 2020, Behan had severe impairments of short bowel syndrome, cervical degenerative disc disease, and osteoporosis, but that she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 of 20 C.F.R. Par 404, Subpart P. ECF NO. 8-1 at 19, 21.

At Step No. 5 of the sequential process, the ALJ found that through December 31, 2020, Behan had the residual functional capacity to perform light work, with limitations of: maintaining seizure precautions (no working at heights, driving, or operating machinery); only simple, routine, and repetitive tasks with one-, two-, or three-step instructions; no fast-paced production requirements; only simple work-related decisions; and few workplace changes. ECF No. 8-1 at 23.

Thus, Behan cannot do any of her past relevant work as actually or generally performed.  ECF No. 8-1 at 25.

The ALJ also found that Behan is a younger individual with a high school education.  ECF No. 8-1 at 25.  The ALJ found there are a significant number of light jobs in the national economy that Behan can perform, such as price marker, self-service store attendant, and housekeeper.  ECF No. 8-1 at 26.  The ALJ concluded that Behand was not under a "disability" as defined in the Social Security Act at any time through the December 31, 2020, the date Behan was last insured. ECF No. 8-1 at 27.

## II.    <u>Law and Analysis</u>

### A.    <u>Because Behan does not meet Listing 12.05, the ALJ's failure to supplement the record with evidence of Behan's intellectual functioning is harmless error.</u>

Behan contends the ALJ failed to carry out the Appeals Council's order on remand to: (1) obtain additional evidence (which may include a consultative examination with psychological testing and medical source opinions) concerning Behan's intellectual impairments in order to complete the administrative record; (2) further evaluate Behan's mental impairments; and (3) further evaluate the opinion of Dr. Thrasher.  The Appeals Council specifically pointed out that one of the three elements that characterizes a mild intellectual disability is significantly subaverage general intellectual functioning that, under Listing 12.05B, is identified by IQ scores on an individually administered standardized test of general intelligence.

ECF No. 8-1 at 112. Behan further contends the ALJ, without explanation, changed his decision as to her mental functioning impairment.

An ALJ "shall take any action ordered by the Appeals Council and may take any additional action that is not inconsistent with the remand order." Social Security Law and Practice § 53:54; 20 CFR 404.977(b).

At step 3 of the disability analysis, an ALJ determines whether the claimant has an impairment that "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments in Appendix 1 "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525 (a). If the claimant has an impairment that meets or equals one of the listings in Appendix 1 and meets the duration requirement, the ALJ will find the claimant disabled. *Id.* If, however, the claimant has an impairment that is not described in Appendix 1, the ALJ "will compare [the claimant's] findings with those for closely analogous listed impairments," and if those findings are "at least of equal medical significance to those of a listed impairment," the ALJ will find that the impairment is medically equivalent to the analogous listing. 20 C.F.R. § 404.1526(b)(2).

In *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007), the Fifth Circuit found that an ALJ's failure to identify the listing for which the claimant's symptoms failed

to qualify, or to provide any explanation as to how he or she made that determination, constituted error as such a bare conclusion is beyond meaningful judicial review. "Although an ALJ is not always required to do an exhaustive point-by-point discussion of the evidence, his or her decision must be susceptible of thoughtful court scrutiny." *Smith v. Astrue,* 914 F. Supp. 2d 764, 784 (E.D. La. 2012) (*quoting Audler,* 501 F.3d at 448).

"However, even where a step three violation has occurred, such must be subjected to a harmless error analysis to determine whether the substantial rights of a party have been affected." *Id.* "That showing typically requires a claimant to demonstrate that her impairment satisfies the criteria of a particular listing." *Id.; see also Dise v. Colvin*, 630 Fed. Appx. 322, 324-25 (5th Cir. 2015) (any error by the ALJ in failing to specifically discuss a potentially applicable listing was harmless); *Bullock v. Astrue*, 277 Fed. Appx. 325, 327-28 (5th Cir. 2007) ("Thus, the sole question . . . is whether substantial evidence supports the ALJ's finding . . . .").[5]

There is no mandatory authority supporting "the proposition that failure to comply with an Appeals Council order constitutes reversible error." *Henderson v. Colvin*, 520 Fed. Appx. 268, 273 (5th Cir. 2013). "The clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or

---

[5] An ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Newton*, 209 F.3d at 458 (quoting *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995)). Nevertheless, these duties "must be balanced against the fact that claimants bear the burden of proof up through step 4 of the evaluation process." *Holifield v. Astrue,* 402 Fed. Appx. 24, 26 (5th Cir. 2010) (citing <u>Audler,</u> 501 F.3d at 448).

the decision is not supported by substantial evidence." *Henderson*, 520 Fed. Appx. at 273. "Procedural perfection in administrative proceedings is not required," we noted, "as long as the substantial rights of a party have not been affected.*" Hurst v. Colvin,* 639 Fed. Appx. 1018, 1020–21 (5th Cir. 2016).

The ALJ erred in finding (in 2021) that Behan was not receiving any ongoing mental health treatment for anxiety or depression. Behan began mental health treatment in October 2019 for opioid addiction and generalized anxiety disorder. The last medical record in the administrative record regarding that ongoing treatment and medications is dated September 2020. It is also noted that Behan's primary care provider, Dr. Alammar, had previously Xanax for prescribed Behan's generalized anxiety disorder ("GAD") for several years.

However, it is clear that Behan's GAD had a minimal affect on her ability to work. She has a substantial work history while being treated for GAD by her primary care provider. The health issues that actually affected her ability to work related to her short bowel syndrome (as noted by Dr. Norem) and her hip pain. Substantial evidence supports the ALJ's finding that Behan's GAD is not a severe impairment.

Behan also contends the ALJ erred in failing to develop the record as to her intellectual functioning and address Listing 12.05B, as directed by the Appeals Council. The Appeals Council remanded Behan's case to the ALJ with instructions: to obtain additional evidence concerning Behan's impairments in order to complete

the administrative record, including a consultative examination with psychological testing and medical source opinions; to further evaluate Behan's mental impairments pursuant to 20 C.F.R. 414.1520a; and to further evaluate the opinion of Dr. Thrasher, Ph.D. pursuant to 20 C.F.R. 414.1520c.  ECF No. 8-1 at 113.  The Appeals Council was specifically concerned by the fact that the ALJ had committed an error of law in finding Behan suffers from a severe impairment of mild intellectual disability without the requisite IQ tests to support that finding, as required under Listing 12.05B.  ECF No. 8-1 at 112.  The only evidence of record that indicates Behan has an intellectual disability are her school records that show she completed high school in special education classes.

On remand, the ALJ did not obtain a consultative exam with testing of Behan's intellectual functioning to determine whether Behan has a severe impairment of intellectual disability and whether she meets Listing 12.05.  Instead, the ALJ simply eliminated "mild intellectual disability" as one of Behan's severe impairments without further evaluating her intellectual disability.[6]  However, if the ALJ erred, the error appears to be harmless.

Although both Dr. Thrasher and Dr. Clanton found that Behan's intellectual impairment affected her ability to do work, the ALJ rejected their opinions.

---

[6] Behan complains the ALJ erred in changing his previous finding that her intellectual disability is a severe impairment.  However, the ALJ's previous decision was not a final decision.  The Appeals Council remanded the case for the ALJ to reconsider his findings.  The ALJ did not err as a matter of law in changing his non-final decision.

Obviously, Behan developed a substantial work history despite her intellectual impairment.

However, if Behan meets Listing 12.05, she is conclusively presumed to be disabled, regardless of whether she engaged in substantial gainful activity in the past. Listing 12.05(B) has three requirements that must be met by a claimant:

12.05. Intellectual disorder (see 12.00B4), satisfied by A or B: . . .

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 70-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitations of two, of the following areas of mental functioning:
   a. Understand, remember, or apply information (see 12.00E); or
   b. Interact with others (see 12.00E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00Ef); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder prior to your attainment of age 22.

The evidence from Dr. Thrasher and Dr. Clanton shows that Behan does not have any extreme or marked limitations in any area of adaptive functioning. Therefore, Behan does not meet the second requirement of Listing 12.05. Because

Behan cannot meet Listing 12.05, the ALJ's alleged errors in failing to obtain additional evidence as to Behan's intellectual functioning to see if Behan meets the first requirement of Listing 12.05B, and in failing to specifically address Listing 12.05 in his decision, are harmless. *See Bordelon v. Astrue*, 281 Fed. Appx. 418, 422 (5th Cir. 2008) (*citing Brock v. Chater,* 84 F.3d 726, 729 (5th Cir. 1996)) ("An ALJ does not err by failing to specifically consider a listing if the record evidence shows that the claimant did not meet the criteria.").[7]

Therefore, substantial evidence supports the ALJ's/Commissioner's decision that Behan does not meet a listing.

### B.    The ALJ adequately articulated an evidentiary basis for his decision.

Behan also contends the ALJ failed to articulate a rational medical and evidentiary basis for ruling that the Behan can perform the activities identified for light work on a regular and continuous basis. Specifically, Behan contends the ALJ failed to address her need to take extra bathroom breaks due to her short bowel syndrome.

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster*, 19 F.4th at 718 (*quoting Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)) *see also Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. 2023). In doing so, the ALJ "examines the medical evidence in the record, including the

---

[7] "We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." *Brock*, 84 F.3d at 729.

testimony of physicians and the claimant's medical records." *Id.* "Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Id.* Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion." *Id.*

Under the new regulations, rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions. 20 C.F.R. § 416.920c(b). And the Commissioner's consideration of the persuasiveness of medical opinions is guided by the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5); 20 C.F.R. § 416.920c(c)(1)-(5).

"Supportability" and "consistency" are the most important factors. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ must explain these factors, but he need not expound on the remaining three unless he finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. 20 C.F.R. § 416.920c(b)(2)-(3). Furthermore, the fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's

medical issues are not primary or dispositive considerations in assessing the medical opinion. *See* 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The ALJ found that Behan can perform light work with seizure precautions, and mental restrictions of: only simple, routine, and repetitive one- or two-step instructions, without a fast-paced work environment, only simply work-related decision, and only few if any workplace changes.  ECF No. 8-1 at 73-74.

The ALJ considered Behan's testimony concerning her need for additional bathroom breaks.  The ALJ noted there were no medical records for Behan's bowel resection when she was an infant.  Although the 40-plus year old surgical records were not produced for the administrative records, Dr. Norem found and noted evidence of Behan's bowel resection when he performed the esophagogastroduodenoscopy.  ECF No. 8-1 at 1113, 1119.  No physician of record, either treating or consulting, disbelieved Behan's medical history of a bowel resection in infancy and resulting short bowel syndrome.  Dr. Norem explained that a lot of Behan's health issues are caused by her short bowel syndrome.  ECF No. 8-1 at 1112.

However, the ALJ disagreed with Dr. Alammar, Dr. Norem, and Dr. Honigman, as well as Dr. Thrasher and Dr. Clanton, and completely ignored Dr. Landrum (since he never referred to her in his decision).  ECF No. 8-1 at 24-25.  In other words, the ALJ did not agree with any medical provider in the record.

Nor did the ALJ explain his conclusion that Behan can do light work (ECF No. 8-1 at 25-26):

> The claimant testified that she is unable to return to work due to short bowel syndrome (restroom use 10 to 12 times per day and 3 to 4 times per night for 10-minute intervals), osteoporosis, and anxiety. However, she alleges seizure-like activity when she is dehydrated and her magnesium and potassium levels drop (occurred twice within the previous 3 months).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's reported activities are not shown to be consistent with her claim of total disability. (Exhibits B3E and testimony).
>
> If an impairment can reasonably be controlled by medication or treatment, it cannot serve as a basis for a finding of disability. (20 CFR 404.1530). She testified that treatment includes magnesium, potassium, vitamin D, iron, Xanax, Zofran, and B-12 injections.
>
> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's reported activities are not shown to be consistent with her claim of total disability.

If an impairment can reasonably be controlled by medication or treatment, it cannot serve as a basis for a finding of disability. (20 CFR 404.1530). She testified that treatment includes magnesium, potassium, vitamin D, iron, Xanax, Zofran, and B-12 injections.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

. . . The objective evidence of record, including previous disability opinions, do not support Dr. Alammar's assessment that the claimant is "disabled"; therefore, the November 2017 assessment is not persuasive.

. . . The objective evidence does not support [Dr. Norem's] functional assessment; therefore, the assessment is not persuasive.

. . . However, [Dr. Honigman's] opinion is not persuasive because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultant. . . .

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective evidence indicating that her gastrointestinal symptoms and musculoskeletal pain are controlled with medication treatment. There is no indication of any surgeries to her gastrointestinal system or neck during the relevant period.

In reports to the Louisiana Employees Retirement System, both Dr. Alammar and Dr. Norem stated that Behan is disabled, but they did not do physical residual functional capacity assessments.  The only physical residual functional capacity

assessment in the record is from Dr. Honigman.  There is no other evidence as to Behan's physical residual functional capacity to perform work, other than the fact that she was on state disability retirement.

The ALJ did not specify what evidence he relied on in concluding that Behan can perform light work:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective evidence indicating that her gastrointestinal symptoms and musculoskeletal pain are controlled with medication treatment.

> There is no indication of any surgeries to her gastrointestinal system or neck during the relevant period.

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, Medical-Vocational Rule 202.21 would direct a finding of "not disabled". However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative light/unskilled (SVP 2) occupations such as price marker DOT# 209.587-034 (125,000 jobs nationally), self-service store

attendant DOT# 299.677-010 (292,000 jobs nationally), and housekeeper DOT# 323.687-014 (220,000 jobs nationally).

Assuming, but not finding, that the claimant would not be capable of performing even simple work, [she] would not be capable of performing any job in the national economy.

Pursuant to SSR 00-4p, the vocational expert specifically testified that his testimony was consistent with the information in the Dictionary of Occupational Titles (DOT), its companion volume, the Selected Characteristics of Occupations, and professional experience as a vocational counselor and in job placement. Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

Behan's extensive medical records in this case are replete with her struggles with the symptoms of short bowel syndrome. And there are many documents from her previous work showing she had to take periods of leave due to that impairment, finally culminating in disability retirement.

However, the ALJ found her short bowel syndrome symptoms are "controlled" by medication, despite having found her short bowel syndrome is a severe impairment. It is implicit in the ALJ's finding of severity that short bowel syndrome has more than a minimal effect on Behan's ability to work. *See Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985). Therefore, the ALJ's finding that such a severe impairment has no effect on her physical residual functional capacity was not well-founded.

45

The ALJ also stated that Behan's complaints are inconsistent with her "reported activities." However, Behan stated in her activities of daily living that she cannot and does not do very much, and repeated that she has to use the bathroom 10 to 12 times per day and three or four times per night. ECF No. 8-1 at 351-357. Behan stated that she only watches TV, goes to church, does laundry, and goes shopping once every two weeks. Behan testified that her husband has to help her do housework. Behan's activities of daily living, alone, do not support the ALJ's finding that she can do light work without a bathroom accommodation.

Without references to supporting medical evidence, the ALJ's bare finding that Behan can do light work without any bathroom accommodation cannot be subjected to meaningful judicial review. *Compare David B. v. Kijakazi*, 2022 WL 816425, at *2 (D. Md. 2022) (the ALJ had "failed to build an accurate and logical bridge from the evidence in plaintiff's record, including plaintiff's subjective complaints, to the conclusion that plaintiff could perform work with ready access to a restroom but only needed to use it during regular breaks"); *Dunsford v. Commissioner of Social Security*, 2023 WL 2242083, at *7 (N.D.N.Y. 2023) ("When a claimant suffers from gastrointestinal ailments, courts in this Circuit have required ALJs to address how the need for bathroom breaks would fit into the claimant's workday."); *Mallard v. Astrue*, 2013 WL 275951, at *3 (W.D. Ark. 2013) (finding that "remand is also necessary for further evaluation of how Plaintiff's bowel disorder impacted his ability to perform work-related tasks on a daily basis"); *Smith*

46

*v. Barnhart*, 2005 WL 418595, at *8 (D. Kan. 2005) ("The ALJ also considered plaintiff's daily activities and stated that these activities indicate that she would be able to control her diarrhea sufficiently to maintain work activity.").

Moreover, the Court does not find any medical evidence in the record that supports the ALJ's finding that Behan can meet the physical requirements of light work without any accommodation for her bowel disorder. Therefore, substantial evidence does not support the ALJ's/Commissioner's conclusion that Behan is not disabled.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Behan to a decision in her favor based upon the existing record. The record is simply inconclusive as to whether Behan can perform her past relevant work, and as to whether there are any jobs existing in sufficient numbers in the national economy that Behan can perform, given her true impairments. Therefore, Behan's case should be remanded to the Commissioner for further proceedings.

III.  <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Behan's case be REMANDED to the Commissioner for further proceedings.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____24th_____ day of April, 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge

48